IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUZANNE M. JONES, | : | CIVIL ACTION |
| *Executrix of the Estate of* | : | |
| *Christopher C. Jones, deceased,* | : | NO. 11-564 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TOWNSHIP OF MIDDLETOWN, | : | |
| Defendant. | : | |

## OPINION

**Slomsky, J.**                                                                                                              **July 26, 2011**

Before the Court is Defendant Township of Middletown's Motion to Dismiss Plaintiff Suzanne Jones's Complaint as executrix of Christopher Jones's estate, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  For reasons that follow, Defendant's Motion will be granted.

**I. PROCEDURAL & FACTUAL BACKGROUND**

Christopher C. Jones was a police officer and patrolman employed by the Township of Middletown in Bucks County, Pennsylvania (the "Township").  (Doc. No. 1 ¶¶ 4–5).  On January 29, 2009, while conducting a traffic stop, Officer Jones was struck and killed by a vehicle.  (Id. ¶¶ 7–8.)  His wife, Plaintiff Suzanne M. Jones, who resides in Penndal, Pennsylvania, brings these claims on behalf of Officer Jones's estate.  (Id. ¶ 3.)

The terms of Officer Jones's employment were covered by a Consolidated Collective

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343. Because the Parties are not diverse, the Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

Bargaining Agreement ("CBA") between the Township and the Police Benevolent Association, which represented Township police officers. (Id. ¶ 6.) Prior to Officer Jones's death, and specifically for the years 2007 and 2008, the Township contracted for and maintained an insurance policy that included $1 million in underinsured motorist ("UIM") coverage. (Id. ¶ 9.) Plaintiff alleges that for calendar year 2009 the Township unilaterally decreased the UIM coverage level to $35,000. (Id. ¶ 9.) Plaintiff alleges that neither Officer Jones nor other "similarly situated" Township police officers received notice of a reduction in coverage, or any other process, before or after the reduced coverage amount went into effect. (Id. ¶¶ 9, 11–12.) Shortly after Officer Jones's death, Plaintiff was advised of the change and informed that the insurance benefits available under the Township's 2007 and 2008 policies were no longer available. (Id. ¶ 10.) Because Officer Jones had not received notice prior to the reduction in the coverage and prior to his death, he was denied the opportunity to purchase supplemental insurance to protect him and his family from a catastrophic accident. (Id. ¶ 16.)

On January 26, 2011, Plaintiff filed a Complaint in this Court seeking damages based on the Township's reduction in UIM benefits.[2] Plaintiff's first claim, pursuant to 42 U.S.C. § 1983, alleges that the Township's failure to provide notice prior to or after the reduction in UIM coverage deprived Officer Jones of property without due process of law, in violation of the Fourteenth Amendment of the U.S. Constitution. Her second claim, for breach of contract, alleges that, under the CBA, Officer Jones was entitled to notice of any change in benefits. (Doc. No. 1 ¶ 22.) Article XII of the CBA addresses insurance benefits, and includes explicit

---

[2] This case was originally assigned to the Honorable Cynthia M. Rufe. On July 12, 2011, the matter was reassigned to this Court.

provisions for liability coverage for officers' conduct in the course of their employment; medical coverage, including post-retirement medical coverage and coverage for surviving spouses and children of officers killed while performing their duties; and life insurance. (Doc. No. 4, Ex. A at 31–34.)  The CBA does not address UIM coverage.  Article XV, Section C requires that "all existing benefits agreed to by the parties . . . or maintained by practice, shall remain in effect unless changed by Agreement of this Association and this Employer." (Id. at 45.)  Finally, Plaintiff's third claim, derivative of her other claims, seeks "exemplary or punitive damages" on grounds that Defendant's failure to provide notice was willful, malicious, and in wanton disregard of Plaintiff's rights. (Doc. No. 1 ¶¶ 25–26.)

The Township moves to dismiss Plaintiff's Complaint for failure to state a claim, asserting that Plaintiff: (1) fails to state a claim under § 1983 because insurance benefits provided by a government employer are not a property interest protected by the due process clause; and (2) has not pled sufficient facts to state a claim for breach of contract or punitive damages. (Doc. No. 3-1 at 2–5.)

## II. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) has been the subject of recent examination, culminating with the Supreme Court's Opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., No. 10-1294, 2010 WL 5071779 (3d Cir. Dec. 14, 2010), set forth a three-part

analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. 2010 WL 5071779, at *4; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (applying the principles of Iqbal and articulating the 12(b)(6) analysis as a two-part test).

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago, 2010 WL 5071779, at *4 (quoting Iqbal, 129 S. Ct. at 1947-50). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, No. 10-3539, 2011 WL 2044166, at *2 (3d Cir. May 26, 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler, 578 F.3d at 210-11 (citing Phillips v. County of Allegheny 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

**III.   DISCUSSION**

In order to establish a claim pursuant to § 1983, "a plaintiff must demonstrate the defendant, acting under color of state law, deprived [plaintiff] of a right secured by the Constitution or the laws of the United States." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008) (quoting Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).  Here, Plaintiff alleges a violation of the Fourteenth Amendment, which prohibits state action that "deprive[s] any person of life, liberty, or property, without due process of law."[3]  U.S. Const. amend. XIV, § 1.  The Due Process Clause protects an individual from state deprivation of constitutionally created rights for reasons so arbitrary, or by conduct so egregious, that it "shocks the conscience," regardless of the adequacy of the procedures used (substantive due process).  See Kaucher, 455 F.3d at 425 (citing Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845 (1998)).  Due process also protects against deprivation of federal- or state-created protected interests without constitutionally adequate process, such as notice and the opportunity to be heard (procedural due process).  See Daniels v. Williams 474 U.S. 327, 339 (1986) (Stevens, J., concurring).  With respect to substantive or procedural due process, before determining the egregiousness of the deprivation or the sufficiency of procedures, a court must determine whether the interest at issue is protected by either substantive or procedural due process.  See Kaucher, 455 F.3d at 423 & n.2 ("[T]he first step in evaluating a section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a

---

[3]     Plaintiff also asserts a claim under the Fifth Amendment.  (Doc. No. 1 ¶ 1.)  This claim will not be considered because the Fifth Amendment applies only to the conduct of the federal government.  See Betts v. Brady, 316 U.S. 455, 462 (1942) *overruled on other grounds by* Gideon v. Wainwright, 372 U.S. 335 (1963).

deprivation of a constitutional right at all.") (citations and quotation omitted).  Because not all interests protected by procedural due process are necessarily protected by substantive due process, where a plaintiff brings both types of claims, the Court must analyze each claim independently.  Nicholas v. Pa. State Univ., 227 F.3d 133, 140 (3d Cir. 2000); Reich v. Beharry, 883 F.2d 239, 244 (3d. Cir. 1989) ("[N]ot all property interests worthy of procedural due process protection are protected by the concept of substantive due process.").

Here, Plaintiff alleges that Officer Jones was deprived of his property, $1,000,000 in UIM coverage provided under the CBA,[4] "without due process of the law" because he was denied pre- and post-deprivation notice of the coverage reduction.  (Doc. No. 1 ¶¶ 16, 18, 19.)  Plaintiff's pleadings, however, do not make clear whether she is asserting a procedural due process claim, a substantive due process claim, or both.  Accordingly, the Court will evaluate the sufficiency of the Complaint with respect to both substantive and procedural due process.

### A. Substantive Due Process

Substantive due process protects against legislative and non-legislative state action. Nicholas, 227 F.3d at 139.  Non-legislative state actions "typically apply to one person or to a limited number of persons, while legislative acts, generally laws and broad executive regulations, apply to large segments of society."  Id. at 139 n.1.  Here, Plaintiff alleges non-legislative action, that is, the Township's denial of insurance coverage required by the CBA or maintained in

---

[4] See Doc. No. 1. ¶¶ 14, 19.  Though the CBA does not expressly provide for UIM benefits, it does provide that "all existing benefits agreed to by the parties . . . or maintained by practice, shall remain in effect unless changed by Agreement of this Association and this Employer." Doc. No. 4, Ex. A at 45.  Because doing so does not impact the outcome here, the Court assumes that the UIM benefits were "maintained by practice," and are considered an employment benefit covered by the clause prohibiting unilateral changes in benefits.

practice. "When a plaintiff challenges a non-legislative state action, to state a substantive due process claim, 'a plaintiff must have been deprived of a particular *quality* of property interest.'" Id. at 140 (emphasis in original) (quoting DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 598 (3d Cir. 1995)). Whether an asserted property interest achieves that quality "is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." Id. at 142. If it is not, the state conduct is not covered by substantive due process, and "will be upheld so long as the state satisfies the requirements of procedural due process," as long as the asserted right is among interests protected by procedural due process. Id.

The doctrine of substantive due process applies only to "cases involving the most intimate matters of family, privacy, and personal autonomy." Armbruster v. Cavanaugh, No. 10–2009, 2011 WL 339534, at *3 (3d Cir. Feb. 4, 2011) (citing *inter alia* Albright v. Oliver, 510 U.S. 266, 272 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.")). Recognizing "that courts should "exercise the utmost care whenever . . . asked to break new ground in this field," the Third Circuit has thus far limited its recognition of non-legislative property rights protected by substantive due process to interests in real property, and have declined to extend substantive due process protection to other property interests. Nicholas, 227 F.3d at 141 (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)); see also Skowronek v. Borough of Avonmore, No. 07-689, 2007 WL 2597930, at *3 (W.D. Pa. Sept. 5, 2007) ("The Third Circuit has recognized 'real property ownership' as the only property right considered to be 'fundamental' in the context of non-legislative substantive due process

review."). Where, as here, a plaintiff complains of the deprivation of a non-legislative *state-created* property right, including employment rights created by contract, she is not entitled to substantive due process protection.[5] Nicholas, 227 F.3d at 142–43 (holding right to public employment does not rise to a fundamental interest and collecting circuit court cases holding denial of state-created contract rights did not constitute a substantive due process violation). In this regard, in Nicholas, the Third Circuit held that substantive due process did not protect tenured employment rights because such an interest was not a fundamental property interest. Id. at 142–43. The Nicholas court concluded:

> "'It cannot be reasonably maintained that public employment is a property interest that is deeply rooted in the Nation's history and traditions. Nor does public employment approach the interests implicit in the concept of ordered liberty like personal choice in matters of marriage and family.'"

Id. at 143 (agreeing with, and quoting Homar v. Gilbert, 63 F. Supp. 2d 559, 576 (M.D. Pa. 1999)) Nicholas is instructive here. Moreover, the Court is not aware of any case in this Circuit holding that contractual rights to non-wage employment benefits or analogous rights are protected by substantive due process. Thus, the Court finds that a contract right to UIM coverage is not a fundamental property interest and therefore the deprivation of that right does not amount to a violation of substantive due process.

---

[5] See also Valot v. Se. Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1233 (6th Cir. 1997) ("Clearly, state-created employment *benefits*, such as unemployment compensation or the right to a government pension, are not "fundamental" rights created by the Constitution, and therefore they do not enjoy substantive due process protection.") (citing McKinney v. Pate, 20 F.3d 1550, 1560 (11th Cir. 1994)); Pence v. Mayor of Bernards Twp., No. 08-2312, 2010 WL 2925901, at *9 (D.N.J. July 21, 2010) (collecting cases holding that state-created property interests are not protected by substantive due process).

**B.     Procedural Due Process**

Having found that Officer Jones's interest in UIM coverage pursuant to the CBA is not protected by substantive due process, the Court must determine whether it constitutes an interest protected by procedural due process.  When "reviewing a procedural due process claim [a court] first determines whether the plaintiff asserts an interest protected by the Fourteenth Amendment."  Renchenski v. Williams, 622 F.3d 315, 325 (3d Cir. 2010) (citing Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)).  Only upon finding that a protected interest is asserted does a court consider the constitutional sufficiency of the procedures associated with the interest.  As alleged here, the interest is in the higher UIM coverage.  Unger v. Nat'l Residents Matching Program, 928 F.2d 1392, 1395 (3d Cir. 1991) (citing Robb v. City of Phila., 733 F.2d 286, 292 (3d Cir. 1984)).

Here, Plaintiff alleges Officer Jones was constitutionally entitled to notice prior to or after the reduction in UIM coverage from $1 million to $35,000.  Plaintiff asserts that "insurance benefits . . . are synonymous with dollars and cents, which of course, are protected property interests," and that such benefits are akin to "salary and other financial benefits which would clearly be protected."  (Doc. No. 4 at 2-3.)  The Court disagrees.

Property interests protected by procedural due process may derive from sources independent of the Constitution, including state law and contractual agreements, whether express or implied.[6]  Unger, 928 F.2d at 1397; see also Perry v. Sinderman, 408 U.S. 593, 602 (1972)

---

[6]     Plaintiff does not allege that the right to UIM benefits was conferred by state statute.  Accordingly, the Court here analyzes only whether the contract created a protectible interest.

(implied agreement based on words and conduct in light of the surrounding circumstances). While it is certainly true that under some circumstances, deprivation of an individual's right to money, benefits or employment opportunities, including those created by contract, can give rise to a procedural due process claim,[7] it is not the case that *any* financial interest created by contract creates a property interest protectible by procedural due process. Reich, 883 F.2d at 242 ("[A]lthough state contract law can give rise to a property interest protectible by procedural due process, not every interest held by virtue of a contract implicates such process."). Otherwise, federal courts would be required to routinely decide the procedural fairness surrounding ordinary contract claims against public entities. See Reich, 883 F.2d at 242.

Instead, the Court must examine the *nature* of the financial benefit conferred by contract, the impact resulting from its denial, and the degree to which a plaintiff is *entitled* to that benefit based on state law or the conditions of the contract. Procedural due process protects only state-created property interests to which a plaintiff has a "legitimate claim of entitlement;" it does not protect property interests in which a plaintiff has a unilateral expectation, need, or desire. Id. (citing Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577 (1972)).

The Third Circuit recognizes only two types of contract rights that give rise to property interests sufficient for a procedural due process claim. Unger, 928 F.2d at 1399. The first type

---

[7] See, e.g., Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–39 (1985) (property interest in continued employment where employee could be terminated only for cause); Goldberg v. Kelly 397 U.S. 254, 261–62 (1970) (property interest in statutorily conferred welfare benefits); Mathews v. Eldridge, 424 U.S. 319, 332 (1976) (property interest in social security disability benefits); Higgins v. Beyer, 293 F.3d 683, 693 (3d Cir. 2002) (property interest in disability benefits held in inmates' prison accounts). A collective bargaining agreement can provide the source for a protectible interest. Danese v. Knox, 827 F. Supp. 185, 190–91 (S.D.N.Y. 1993) (collecting cases).

"arises where the contract confers a *protected status*, such as those 'characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both . . . .'" Id. (emphasis added) (quoting S & D Maint. Co. v. Goldin, 844 F.2d 962, 966 (2d Cir. 1988)).  The second type, applicable generally in the context of employment termination, "arises where the contract itself includes a provision that the state entity can terminate the contract only for cause." Id.

Applying this test, the Third Circuit, in Boyd v. Rockwood Area School District, 105 F. App'x 382 (3d Cir. 2004),  held that retired school teachers' rights to a particular type of health insurance under a CBA did not confer a protectible interest.  105 F. App'x at 386.  Though the value of the benefits had been reduced in a subsequent CBA, and was important for the retirees' health care, it was not sufficient to create a protected status.  Moreover, the contract could be terminated for a reason other than cause, and the retirees were aware that health insurance benefits could be altered in subsequent CBAs.

Similarly, district courts in the Third Circuit and elsewhere have generally declined to find a protectible property interest in ancillary financial benefits associated with employment, such as sick leave, health care and pension benefits, where those benefits do not rise to the level of extreme dependence or permanence, despite their financial value, and where the benefit can be discontinued for reasons other than cause.  See, e.g., Costello v. Town of Fairfield, 811 F.2d 782, 784 (2d Cir. 1987) (denial of increases in pension benefits pursuant to a CBA is not a protectible interest, unlike denial of all pension benefits); Seacrist v. Skrepenak, No. 07-2116, 2009 WL 9596460, at *5  (M.D. Pa. Apr. 6, 2009) (no protectible interest in one-time severance payment because recipient is not dependent on continuation of the entitlement for day-to-day

survival and the terms of the contract could be revoked)) (citing Boyd, 105 F. App'x at 386));
Skowronek v. Borough of Avonmore, No. 07-689, 2007 WL 2597930, at *3 (W.D. Pa. Sept. 5, 2007) (no protectible interest in employment benefits, such as sick leave); Piekutowski v. Twp. of Plains, No. 05-2078, 2006 WL 3254536, at *3–5 (M.D. Pa. Nov. 9, 2006) (no protectible property interest in payment for accrued sick leave because benefit was not terminable only for cause and, though providing financial benefits, did not have the character or quality of extreme dependence or permanence); Huffman v. Town of La Plata, No. 04-2833, 2005 WL 1038854, at *5 (D. Md. May 4, 2005) (no protectible property interest in health care benefits where there was no expectation that the agreement to provide benefits would continue in perpetuity); Lawrence v. Town of Irondequoit, 246 F. Supp. 2d 150, 156 (W.D.N.Y. 2002) (no protectible interest where Town reduced retirees health care benefits by providing inferior plan because the right was "qualitatively different" from those found protected by due process); Danese, 827 F. Supp. at 193 (right to sick leave is "akin to ordinary contract right . . . for the simple reason that it is quantifiable rather than intangible") (quotations and citation omitted).

      While cognizant of the tragic circumstances underlying Plaintiff's claims, the Court finds that from the legal authority cited, Officer Jones's interest in the higher UIM coverage is not a property interest protected by procedural due process.  First, the benefit was not entirely discontinued; its value was reduced, as in Boyd.  Second, despite the significant monetary value and undoubted importance of the $1 million coverage level to Officer Jones's estate, there is no indication that the UIM coverage had the quality of extreme dependence or permanence required for a protectible interest, particularly given the other health insurance, pension and survivor benefits provided under the CBA, the deprivation of which is not alleged here.  Third, the

insurance provisions of the CBA permit termination of the benefits for reasons other than cause, and the CBA clearly indicates that the benefits conferred by the agreement or maintained in practice may be altered by agreement of the Association and the Township. Thus, no Association member could rely on continuation of the same insurance benefits over time. Though Plaintiff alleges that Township *unilaterally* reduced the coverage, this does not alter the finding that there could be no expectation of a continuation in coverage from agreement-to-agreement. Thus Plaintiff's allegations sound in breach of contract, for which the Commonwealth provides an adequate judicial remedy;[8] they do not create a basis for a § 1983 claim. See Boyd, 105 F. App'x at 386–87 (whether change in benefits constitutes a breach of contract turns on state contact law that does not implicate constitutional rights); St. Germain v. Pa. Liquor Control Bd., No. 98-5437, 2000 WL 39065, at *7 (E.D. Pa. Jan. 19, 2000) (noting that state's denial of travel reimbursement may violate employment agreement but finding "employment decisions that violate employment contracts do not necessarily form the basis for § 1983 actions").

    Accordingly, the Court finds that Officer Jones's right to UIM benefits is neither a fundamental interest protected by substantive due process, nor a property interest protected by procedural due process. Therefore Plaintiff's Section 1983 claim, and any portion of her claim for punitive damages derived from the Section 1983 claim, will be dismissed. Moreover, taking Plaintiff's pleaded allegations as true and viewing them in a light most favorable to her, the

---

[8] Pence, 2010 WL 2925901 at *8 (if employee had contractual right to payment for her accrued sick time, the Township's refusal to pay "creates nothing more than a state law breach of contract claim and does not provide a basis for a § 1983 claim"); Ferrone v. Onorato, No. 05-484, 2007 WL 184815, at *3 (W.D. Pa. Jan. 19, 2007) (finding no due process violation in ordinary breach of contract claim where state provides post-deprivation judicial remedy).

Court finds that amendment of the Complaint would be futile since there is no plausible claim for a due process violation.  Therefore, the Court will dismiss the § 1983 claim with prejudice. Winer Family Trust v. Queen, 503 F.3d 319, 330–31 (3d Cir. 2007) ( "[A] District Court may deny leave to amend on ground that it would cause undue delay or prejudice, or where amendment would be futile.") (quotations and citation omitted).

### C. Supplemental Jurisdiction Over State Law Claims

The only claims remaining are based on Pennsylvania law.  Although federal courts with original jurisdiction over a federal claim have supplemental jurisdiction over state claims that form "part of the same case or controversy," a court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(a), (c)(3).  The Third Circuit directs that, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) (citing *inter alia* Growth Horizons, Inc. v. Del. Cnty., 983 F.2d 1277 (3d Cir. 1993)).

Here, these factors warrant dismissal of Plaintiff's state law claims.  First, there is no judicial economy in trying the state claims here: the case is in its earliest stages, an answer has not been filed, discovery has not occurred and trial has not been scheduled.  See, e.g., Plum Prop. Assocs., Inc. v. Mineral Trading Co., No. 09-1059, 2009 WL 5206013, at *5 (W.D. Pa. Dec. 23, 2009) (declining to exercise jurisdiction over state law claims after dismissing federal claims

because of the early stage of proceedings prior to discovery). Second, state court is an equally convenient forum given that all parties are citizens of Pennsylvania. Third, no unfairness to Plaintiff will result from dismissal of the state law claims because 28 U.S.C. § 1367(d) tolls the statute of limitations for 30 days, and Plaintiff may transfer her state claims to state court under 42 Pa.C.S.A. § 5103(b). See Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000); Plum Prop. Assocs., Inc., 2009 WL 5206013 at *5; see also Williams v. F.L. Smithe Mach. Co., 577 A.2d 907, 909 (Pa. Super. Ct. 1990) (plaintiff may transfer to state court a timely filed action in federal court that is dismissed for lack of jurisdiction, and state action will be deemed filed on the date it was first filed in the federal court). Therefore, because no federal claims remain, pursuant to Section 1367(c)(3), the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims for breach of contract and punitive damages derived therefrom.

## IV.   CONCLUSION

For the foregoing reasons, the Court will dismiss Plaintiff's § 1983 claim, and that portion of her claim for punitive damages derived from the § 1983 claim, with prejudice. The Court will dismiss Plaintiff's state law claim for breach of contract, and that portion of her claim for punitive damages derived from the state law claim, without prejudice.

An appropriate Order follows.